

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                Crim. No. 06-864-MRH

v.                                 ORDER

TERRY LEE STEWARD,

        Defendant.

The government filed a "Motion for Order to Involuntarily Medicate Defendant to Restore him to Competency" so he may be tried on charges that he threatened United States judges in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4).

<u>Factual Background</u>

The defendant has been detained since November 3, 2006 as a non-appearance risk and danger to the community. He has been incarcerated at the Metropolitan Detention Center (MDC), Los Angeles, California, except for the period from approximately June through September, 2007, when he was housed at the Medical

Center for Federal Prisoners (MCFP) at Springfield, Missouri.

By order dated April 26, 2007, the court found defendant incompetent to stand trial, based on the April 4, 2007 report of Manual Saint Martin, M.D.

Dr. Martin diagnosed defendant with delusional disorder, possible paranoid schizophrenia. Dr. Martin reported that both conditions are treated with antipsychotic medications. Based on statements of the defendant recorded by the FBI near the time of the alleged offense, Dr. Martin believes that as a result of a severe mental disease or defect, defendant was insane as defined in 18 U.S.C. § 17, that is, defendant was unable to appreciate the nature and quality or the wrongfulness of his acts.

Richard Frederick, Ph.D. evaluated defendant at the MCFP. In his August 21, 2007 report, Dr. Frederick diagnosed defendant with schizophrenia, paranoid type. Dr. Frederick found defendant not competent to proceed with trial because his mental condition interfered with his abilities to appreciate the consequences of the proceedings and communicate about his case. Dr. Frederick noted that defendant consistently refused to voluntarily take psychotropic medications, and that such medications are generally effective to treat his symptoms. Dr. Frederick wrote that without medication, defendant will not become competent to stand trial. Dr. Frederick concluded that a basis does not exist to force medication to restore competency for trial, because

2 - ORDER

defendant was not imminently dangerous to himself and others, or gravely disabled.

In a report dated February 4, 2008 (MDC report), MDC psychiatric/psychological staff found that defendant's major delusional disorder, mixed type, impairs his ability to properly assist counsel in his defense. The staff opined that antipsychotic medication is the most appropriate treatment.

> The treatment of choice for psychotic disorder is antipsychotic mediation. Other forms of treatment, including education, psychotherapy, and behavioral interventions, do not address the core of the disorder and, when utilized alone, are unlikely to be successful. However, these treatment modalities are beneficial when used in conjunction with antipsychotic medication. Without the medication, he would not likely be amenable or responsive to any attempts at education, psychotherapy, or behavioral interventions.

The report notes that "[g]enerally, even uncooperative patients who require injections cooperate with the administration of oral medications once their conditions begin to stabilize."

The report states that psychiatric medications tend to have fewer side effects than most other classes of medications, the vast majority of patients report no serious side effects, nuisance side effects can be effectively addressed, and the most likely side effect is sedation, which can be addressed by adjusting dosage.

The report documents that defendant consistently refused to take antipsychotic during his incarceration, except for a period of approximately 20 days in April 2007 when defendant voluntarily

3 - ORDER

took Haldol. Defendant denied to the evaluators that he ever took psychotropic medications voluntarily. The report states that Haldol was discontinued after defendant complained of side effects and declined to take the medication.

The staff recommended "[a] three to six month trial of Prolixin, 10 mg/day; Zprexa, 10 to 20 mg/day; or Risperdal, 2-6 mg/day."

> There is a 75% likelihood of improvement with any of these medications. the most likely side effect would be sedation . . . with low probability of interfering with Mr. Steward's ability to assist in his defense. The medication Prolixin has a higher side effect profile than the other two medications, so it might be best to start with a trial of Zyprexa or Risperdal. However, Prolixin is available in an injectable form that can be given every two or four weeks, and therefore reduce compliance problems. Mr. Steward should be monitored for medication effectiveness and side effects at least once a month while on the medication.
>
> The usual starting dosage of Cogentin (a medication that reduces extrapyramidal symptoms or potential side effects should be given together with any of the recommended antipsychotic medications.

Consistent with the MDC report, MDC Chief Forensic Psychologist Ralph Ihle, Ph.D., testified that medications are necessary to restore defendant's competency to stand trial, and that competency is generally restored after a three to six month treatment period. Dr. Ihle further testified that if involuntary treatment is ordered, defendant will be transferred from MDC to a Bureau of Prisons medical facility. Dr. Ihle stated that when medication is discontinued,

> there are some folks that do have a relapse over the course of a few weeks, over the course of a few months. * * * [Y]ou wouldn't necessarily see the full onset of symptoms just by virtue of not taking one injection or two.

Dr. Ihle stated that some patients who have been restored to competency choose to continue medication, while those that do not have a very low probability of relapsing quickly. "There is usually some period of time, and again, it can be anywhere from a few months, two or three months, on up to six months. Highly variable."

MDC Clinical Director and Forensic Psychiatrist Alexander Sinavsky testified regarding the following matters. Dr. Sinavsky saw the defendant at the MDC in November 2006, October 2007 and February 2008. Defendant told Dr. Sinavsky in October 2007 that he was not willing to take antipsychotic medication. There is a 75% likelihood that defendant would be restored to competency if he were to take 1 25-50 mg injection of Risperdal every two weeks for three to six months. Possible side effects of Risperdal include tardive dyskinesia (involuntary muscle movement) in sensitive individuals taking high doses, low blood pressure and associated fainting in one to five percent of patients, arrhythmia in less than one half of one percent of patients, tiredness, dizziness and slowed mental functioning at very high doses. It is not likely that the recommended doses would result in slowed mental functioning. Monitoring would be necessary to

5 - ORDER

detect side effects, side effects could be decreased by adjusting dosage, and, with the exception of tardive dyskinesia on vary rare occasions, side effects are not permanent. Paranoid schizophrenics almost never improve without medication. Persons with delusional disorders usually do not improve without medication. Twenty or thirty percent of persons with delusional disorders may improve without medication, but improvement may take years.

Another injectable medication recommended by Dr. Sinavsky is Prolixin Decanoate, which can be administered between 25 mg once a week, up to 150 mg once every two weeks. Dr. Sinavsky stated that Prolixin is usually very effective, but is more likely than Risperdal to cause muscular side effects. Dr. Sinavsky's first recommendation would be Risperdal, followed by Prolixin Decanoate.

Dr. Sinavsky testified that when medication is discontinued, relapse can occur within a month, and most people on medication for psychotic mental illness will relapse within a year from the time medication is discontinued.

Mr. Steward testified that he is competent, he understands the proceedings, he is working with his attorney, he refuses to take pyschotropic medications because he doesn't need them to be competent, "[t]he delusional disorder is a delusional disorder," and he will not voluntarily take psychotropic medications.

6 - ORDER

Discussion

I. Standards

"[A]n individual has a significant liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding the unwanted administration of antipsychotic drugs." United States v. Hernandez-Vasquez, 513 F.3d 908, 912 (9th Cir. 2008) (citing to Washington v. Harper, 494 U.S. 210 (1990)). In limited circumstances, however, the Constitution permits the government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant in order to render that defendant competent to stand trial for serious, but nonviolent crimes. Id. (citing to Sell v. United States, 539 U.S. 166 (2003)).

Considerations of inmate health and dangerousness generally provide stronger justifications for involuntary medication than restoration of competency to stand trial. Id. at 913-14. Absent other considerations justifying involuntary medication, the defendant may be forcibly medicated to restore competency for trial in the rare case when four conditions (Sell factors) prevail. Hernandez-Vasquez, 513 F.3d at 913.

First, the government must have an important interest in the prosecution of the defendant. Id. Second, involuntary medication must be substantially likely to render the defendant competent to stand trial, and substantially unlikely to have side effects that will interfere significantly with defendant's

7 - ORDER

ability to assist counsel in conducting the trial defense. <u>Id</u>. Third, involuntary medication must be necessary to further the government's important interest, and alternative, less obtrusive methods must be unlikely to achieve substantially the same results. <u>Id</u>. Less intrusive means must be considered, such as a court order backed by contempt power. <u>Id</u>. Fourth and finally, the administration of the medication must be medically appropriate, that is, in defendant's best medical interest in light of his medical condition. <u>Id</u>. Furthermore,

> a <u>Sell</u> order must provide at least some limitations on the medications that may be administered and the maximum dosages and duration of treatment. At a minimum, to pass muster under <u>Sell</u>, the district court's order must identify: (1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, (2) the maximum dosages that may be administered, and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians are required to report back to the court on the defendant's mental condition and progress. [W]hile the court may not simply delegate unrestricted authority to physicians, the restrictions it does impose should be broad enough to give physicians a reasonable degree of flexibility in responding to changes in the defendant's condition. Moreover, the Government or the defendant may move to alter the court's order as the circumstances change and more becomes known about the defendant's response to the medication.

<u>Id</u>. at 916-17.

II. <u>Analysis of Sell Factors & Findings</u>

    A.  Alternative Justifications for Involuntary Medication

    The government provides no justification for an order to

8 - ORDER

involuntarily medicate defendant other than the restoration of competency. Dr. Frederick opined that health and safety concerns do not justify involuntary medication of defendant. Based on clear and convincing evidence, health and safety concerns do not justify the involuntary administration of medication to defendant.

    B.   Government Interest in Prosecution

The government has an important interest in bringing to trial an individual accused of a serious crime. Sell, 539 U.S. at 180. The importance of the government's interest in adjudication depends upon the seriousness of the alleged crime, and the specific circumstances of individual defendant. See Hernandez-Vasquez, 513 F.3d at 919. The crime seriousness inquiry begins with reference to the advisory sentencing guidelines. Id. The nature of the alleged crime must also be considered. "[T]wo indictments alleging crimes with equal likely guideline ranges will not always be equally serious within the meaning of Sell." Hernandez-Vasquez, 513 F.3d at 919. Certain considerations diminish the government's interest in prosecution. United States v. Morrison, 415 F.3d 1180, 1186 (10th Cir. 2005). These considerations include the duration of pretrial incarceration for which the defendant will receive credit at sentencing, the amount of time the defendant will likely spend incarcerated through trial and appeal, the amount of time the

9 - ORDER

defendant may spend civilly committed if he is not restored to competency and convicted, evidence of dangerousness or other factors which could result in a sentence outside the range of the guidelines, and the possibility of the insanity defense. Id.

The government argues, and defendant does not dispute, that the advisory guideline sentencing range is 33-41 months. Gov't Brief at 14. Threatening judges is a serious crime under any reasonable standard. See United States v. Evans, 404 F.3d 227, 238 (4th Cir. 2005). Defendant has spent approximately 17 months in pretrial detention. Treatment to determine whether defendant can be restored to competency with medication could take six more months. One may only speculate as to how long defendant may be incarcerated through appeal if adjudicated guilty. The time of incarceration through appeal could exceed the upper end of the advisory guideline sentencing range, but that does not seem likely. The record does not presently disclose aggravating factors likely to lead to a sentence above the guideline range. Dr. Saint Martin's report indicates the possibility of the insanity defense. Dr. Frederick's report suggests that if defendant were found not guilty by reason of insanity, civil commitment may not be warranted.

Notwithstanding the possibility of the insanity defense and the possibility that defendant could be incarcerated pending appeal beyond the range of the advisory guideline if adjudicated

10 - ORDER

guilty, the crime of threatening judges in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4) is sufficiently serious, and the government's interest in prosecuting this crime is sufficiently important, that the involuntary administration of medication to restore competency is warranted.

    C.   Likelihood of Restoration of Competency and Side Effects

Clear and convincing evidence, in the form of the MDC report and testimony of Drs. Ihle and Sinavsky, proves that injections of Risperdal and Prolixin Decanoate, administered in the specified doses under the specified conditions, are substantially likely to restore defendant to competency to stand trial, and substantially unlikely to have side effects that will interfere significantly with defendant's ability to assist counsel in conducting the trial defense.

    D.   Alternative Methods

Defendant's competency is unlikely to be restored without antipsychotic medication. While incarcerated, defendant has, with the exception of one three-week period, consistently refused to take antipsychotic medication. Defendant testified that he will not voluntarily take such medication. Methods less intrusive than involuntary medication are unlikely to restore defendant to competency. Clear and convincing evidence proves that involuntary medication is necessary to further the government's important interest in prosecuting this case.

11 - ORDER

E.  Medical Propriety of Medication

Dr. Saint Martin's report, the MDC report, and the testimony of Dr. Sinavsky, prove that antipsychotic medications are the appropriate treatment for delusional disorder and/or paranoid schizophrenia.  Clear and convincing evidence proves that the administration of Risperdal and Prolixin Decanoate are in defendant's best medical interest in light of his medical condition.

## Conclusion

Based on the foregoing, the government's motion for order to involuntarily medicate defendant to restore competency [#78] is granted.

Bureau of Prisons medical staff shall treat defendant to restore him to competency to proceed to trial, beginning as soon as possible.  If defendant does not voluntarily accept appropriate treatment, medical staff shall involuntarily medicate defendant with injectable Risperdal or Prolixin Decanoate.  The maximum permissible dose of Risperdal is 50 mg, administered once every two weeks.  The maximum permissible dose of Prolixin Decanoate is 150 mg, administered once every two weeks.  More frequent administrations of lower doses are permitted, so long as the maximum dosages are not exceeded.  For example, 25 mg weekly doses of Risperdal, and 75 mg weekly doses of Prolixin Decanoate, are permitted.  Not later than three months after the

commencement of treatment, Bureau of Prisons medical staff shall furnish the court with a written report of the treatment. The report shall address the progress, effects and side effects of the treatment, the prognosis for restoration of competency, the medical propriety of further treatment, and, if further treatment is appropriate, whether the defendant is likely to accept voluntary treatment. After reviewing the report, the court will determine whether to continue the authorization for involuntary medication.

    IT IS SO ORDERED.
    DATED this 22nd day of May, 2008.

                                             *Michael R. Hogan*
                                             United States District Judge