LAURA E. DUFFY
United States Attorney
ROBERT S. HUIE
Special Attorney
California State Bar No. 237374
880 Front Street, Room 6293
San Diego, California 92101-8893
Tel. (619) 557-5766 / Fax (619) 235-4716
robert.huie@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      ) Case No. 06-CR-0864-MRH
                               )
            Plaintiff,         ) **UNITED STATES' TRIAL MEMORANDUM**
                               )
            v.                 ) Trial Date: October 27, 2010
                               ) Time: 9:00 a.m.
TERRY LEE STEWARD,             )
                               )
            Defendant.         )
                               )
_____)

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Laura E. Duffy, United States Attorney, and Robert S. Huie, Special Attorney, hereby files its Trial Memorandum.

**I**

**STATUS OF THE CASE**

**A.    Indictment**

On November 17, 2006, a federal grand jury in the Central District of California returned a four-count indictment charging Defendant with making threats to assault and murder two federal judges. Defendant was arraigned on the indictment on November 27, 2006, and entered a plea of not guilty.

//

**B.**   <u>**Competence**</u>

At Defendant's initial appearance on November 3, 2006, U.S. Magistrate Judge Rosalyn M. Chapman ordered that Defendant be evaluated for competency by Dr. Saul Faerstein.  Dr. Faerstein, in a letter dated November 16, 2006, concluded that Defendant was competent to stand trial.

On January 18, 2007, Defendant's new counsel, Errol Stambler, Esq., filed a motion for a further examination and evaluation of Defendant, which the Government did not oppose.  The Court granted Defendant's motion on February 23, 2007, and appointed Dr. Manuel St. Martin to conduct an evaluation.  Dr. St. Martin concluded that Defendant was not competent to stand trial.  On April 27, 2010, the Court found Defendant not competent, and committed him for treatment to restore him to competency pursuant to 18 U.S.C. § 4241(d).

On November 16, 2007, following evaluation by doctors at FMC-Springfield, Defendant filed a motion for release.  On November 21, 2007, the Government responded to Defendant's motion, and filed its own motion requesting that Defendant be involuntarily medicated pursuant to <u>Sell v. United States</u>, 539 U.S. 166 (2003), to restore his competency.  On April 25, 2008, after the completion of further examinations, the district court conducted a <u>Sell</u> hearing.  On May 28, 2008, the district court granted the Government's motion and ordered that the medical staff of the Bureau of Prisons treat Defendant to return him to competency by the involuntary administration of antipsychotic medication.

On June 3, 2008, Defendant filed an interlocutory appeal of

the court's order directing involuntary medication.  The district court granted Defendant's unopposed motion for a stay pending appeal.  The Ninth Circuit affirmed, and the mandate issued on September 15, 2009.  Defendant was transported to FMC-Springfield to receive medication and undergo further evaluation.

At a status hearing on August 24, 2010, the Court advised, based on information received from FMC-Springfield, that Defendant had been found competent to stand trial.

## C.   Trial Status

A jury trial is scheduled for Wednesday, October 27, 2010 at 9:00 a.m. before the Honorable Michael R. Hogan.  The government's case-in-chief is estimated to last one to one-and-one-half days.

## D.   Insanity Defense Withdrawn

On January 12, 2007, Defendant filed a Notice of Insanity Defense.  [Dkt. No. 54.]  On August 23, 2010, Defendant filed a Notice of Withdrawal of Insanity Defense [Dkt. No. 121], withdrawing his previously filed notice.

## E.   Status of Counsel

Defendant is represented by Errol Stambler, Esq.

## F.   Custody Status

Defendant is in custody.

## G.   Interpreter

The Government does not require an interpreter for trial.

## H.   Jury Waiver

Defendant has not filed a jury waiver.

## I.   Pretrial Motions

On August 30, 2010, Defendant filed a motion for a bill of particulars.  [Dkt. No. 124.]  The United States filed its

opposition on September 15, 2010. [Dkt. No. 125.]  The Court held a hearing on the motion on September 30, 2010.

On September 21, 2010, Defendant filed motions in limine to (1) preclude evidence regarding Defendant's past conduct, and (2) preclude evidence of weapons seized from Defendant's home. [Dkt. No. 129.]  On September 27, 2010, the United States filed motions in limine to (1) preclude an insanity defense, and (2) preclude reference to length of time in or reasons for pretrial custody. [Dkt. No. 130.]  Responses to motions in limine are due on October 1, 2010, and the motions are scheduled to be heard on October 14, 2006.

**J.   Stipulations**

The parties have not agreed to any trial stipulations at this time.

**K.   Discovery**

The United States has complied with its discovery obligations and will continue to do so.   No reciprocal discovery has been received.

**L.   Trial Presentation**

The United States intends to use an overhead projector as well as Sanction, a trial presentation application, to publish documents and photographs at trial.   The United States also intends to use PowerPoint in its closing argument.   The United States will also introduce a hard copy of documentary evidence for the jury's review.

//

//

//

## II

### STATEMENT OF FACTS

**A.    Steward's Conduct in the Malpractice Lawsuit**

In March 2002, Steward filed an Administrative Tort Claim based on medical treatment he had received from the Veterans Administration ("VA").  The crux of his claim was that VA doctors failed to timely diagnose a tumor in his neck, resulting in damage to his vocal cords.  Steward's case was docketed in the United States District Court for the Central District of California as case number 03-CV-2715 (the "Malpractice Lawsuit").

Steward's case was reassigned several times to judges in the Central District of California, and was eventually assigned to U.S. District Judge A. Howard Matz in February 2006.  Judge Matz conducted a bench trial in April 2006.

During the several months that Judge Matz presided over Steward's case, he had the opportunity to observe Defendant's conduct in the courtroom.  Steward represented himself throughout the proceedings.  On several occasions, Steward interrupted counsel, witnesses, or the judge; and behaved in an angry, hostile, or disruptive manner.  On one occasion during the trial, as Judge Matz was leaving the bench, Steward yelled at Judge Matz and had to be calmed by the Marshals.

In June 2006, Judge Matz issued his Findings of Fact and Conclusion of Law, in which he concluded that the VA doctors had not committed malpractice.  At the same time, Judge Matz concluded that the doctors had failed to inform Steward of the precise nature of the surgery they performed, and that they thereby failed to properly obtain Steward's informed consent.  Judge Matz awarded

Steward $75,000 in damages, based on the emotional distress Steward had experienced resulting from the failure to properly obtain his informed consent.

**B.    Steward Is Dissatisfied With His Award And Files A Civil Rights Lawsuit**

In July 2006, Steward filed a second lawsuit against the United States, claiming that his civil rights had been violated by, among other things, the alleged failure by Judge Matz to uphold the law in the first lawsuit.  The second lawsuit was docketed in the Central District of California as case number 06-CV-4252 (the "Civil Rights Lawsuit"), and was forwarded to United States Magistrate Judge Oswald Parada for screening purposes.  On September 7, 2006, Judge Parada dismissed the complaint with leave to amend.

**C.    Steward Threatens Judge Matz and Judge Parada In Written Pleadings**

On October 2, 2006, Steward filed a First Amended Complaint in the Civil Rights Lawsuit.  In the First Amended Complaint, Steward alleged that Judge Matz had allowed the defense team in the Malpractice Lawsuit to engage in perjury, fraud, deceit and obstruction of justice.  Steward described the $75,000 award he received as "spit in my face."  Addressing Judge Parada in the First Amended Complaint, Steward demanded that the case be reassigned to Judge Matz, "that he may make atonement for his sin against God."

In the First Amended Complaint, Steward made numerous references to killing and death.  He wrote, "In my Civil Case, America forgot its own ideals of truth and justice and they did to me that which is unrighteous and by the Law of God all

unrighteousness is the wages of death." He advised Judge Parada, "if you do not allow this case to go forward and give the case to Judge Matz you will kill him and all of his generations until his bloodline is completely finished before the eyes of the Lord." Steward stated that "this is Judge A. Howard Matz's only chance to redeem himself and to save his life and his soul." Steward also warned, "Magistrate Judge Oswald Parada, I suggest you also be careful not to anger this great power that dwells and has made its home in me for he who is God, is me, the one True Judge of All." In addition to demanding that the case be reassigned to Judge Matz, Steward demanded an award of damages, and that the VA doctors be sent to jail.

**D.   Agents Interview Steward at his Home**

On October 16, 2006, FBI Special Agents Chris Calarco and David Cloney interviewed Steward at his home. Steward told the agents about the Malpractice Lawsuit and his belief that he had not been treated fairly. Steward repeated that his new case should be reassigned by Judge Parada to Judge Matz. Steward stated that if the case were not reassigned, that "death will occur to both of them," and indeed that Judge Matz's entire "bloodline" would be brought to an end. Steward also stated that he was a former United States Marine; described himself as a "master" in the martial arts; and showed the agents a photo depicting him holding a samurai sword.

**E.   Steward Files Additional Threats**

Approximately one week later, on October 23, 2006, Steward filed several documents in his Civil Rights Lawsuit. One of these documents was styled a "Notice of Motion to Relocate Case." In

this motion, Steward wrote that "the unrighteous will not abide in life, and must suffer death." He explained that Judge Matz had "lost his soul in Case CV03-2715 and if a man loses his soul the body will not live too much longer," and told Judge Parada, "If you dismiss this case again, you will lose your soul as well." Steward also stated, "My will is always Life, But Death is for Those who defile, or deny my word, for it is Life and death." Steward further stated that "People kill themselves when they don't listen to God," and urged, "Magistrate Judge Oswald Parada, don't kill yourself or Judge Matz."

Also on October 23, 2006, Defendant filed in the same case two additional documents: a notice of request for arrest warrants, and an opposition to the Government's motion to dismiss. These documents likewise expressed Defendant's anger at Judge Matz over his handling of the Malpractice Lawsuit. In the notice of request for arrest warrants, Defendant wrote to Judge Parada, "Magistrate Judge, be honorable and do your job and tell District Judge A. Howard Matz to take this Civil Rights Case and do his damn job." In his opposition to the Government's motion to dismiss, Defendant likewise wrote, "I would like you to send this case back to Judge A. Howard Matz," and added, "I tell you there is Hell [to] pay."

**F.   Steward Is Arrested at His Home and His Weapons Are Seized**

On November 2, 2006, after Steward had filed additional pleadings containing threatening statements, the United States filed a criminal complaint against Steward and obtained an arrest warrant and a search warrant.

The following day, FBI agents arrested Steward at his home in

1  Palmdale, California, pursuant to the arrest warrant.  Agents

2  seized various weapons from Defendant's home, including three

3  samurai swords, two staffs, and a large survival knife.

4  III

5  **WITNESSES**

6  As set forth in the United States' separately filed Witness

7  List [Dkt. No. 127], the United States expects to call the

8  following witnesses in its case-in-chief, although it reserves the

9  right to change the order of these witnesses, substitute witnesses,

10  add witnesses, or omit one or more of these witnesses.

11  1.  The Hon. A. Howard Matz, U.S. District Judge

12  2.  The Hon. Oswald Parada, U.S. Magistrate Judge

13  3.  Special Agent Chris Calarco, FBI

14  IV

15  **EXHIBIT LIST**

16  As set forth in the United States' separately filed Exhibit

17  List [Dkt. No. 126], the following is a list of exhibits which have

18  been pre-marked for trial, submitted to chambers, and served on

19  defense counsel.  The United States does not necessarily intend to

20  request admission of every exhibit into evidence.

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Certified copy of Dkt. No. 227, 03-CV-2715 ("Findings of Fact and Conclusions of Law") |
| 2 | Certified copy of Dkt. No. 230, 03-CV-2715 ("Judgment") |
| 3 | Certified copy of Dkt. No. 3, 06-CV-4252 ("Complaint") |
| 4 | Certified copy of Dkt. No. 12, 06-CV-4252 ("Order Dismissing Complaint with Leave to Amend") |
| 5 | Certified copy of Dkt. No. 15, 06-CV-4252 |

("First Amended Complaint")

6 Certified copy of Dkt. No. 20, 06-CV-4252 ("Motion to Relocate Case")

7 Certified copy of Dkt. No. 18, 06-CV-4252 ("Notice of Request for Federal Constitutional and Judicial Arrest Warrants")

8 Certified copy of Dkt. No. 21, 06-CV-4252 ("Notice of Plaintiff's Opposition to Defendant's Motion to Dismiss")

9 CD recording of October 16, 2006 interview with Defendant

10 Transcript of recording of October 16, 2006 interview with Defendant

11 Printed pages from Defendant's web site, www.brockterrian.com.

12 Photograph of items seized at Defendant's residence upon execution of search warrant on November 3, 2006

13 Photograph of Defendant holding sword (seized from Defendant's residence)

14 Long sword (seized from Defendant's residence)

15 Medium sword (seized from Defendant's residence)

16 Short sword (seized from Defendant's residence)

17 Red staff (seized from Defendant's residence)

18 Blue staff (seized from  Defendant's residence)

19 Survival knife (seized from Defendant's residence)

**V**

**JURY INSTRUCTIONS**

Proposed jury instructions are being filed today under separate cover. The United States reserves the right to submit additional instructions at the Rule 30 conference.

//

//

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# VI

## LEGAL ISSUES

### A.   Elements

In order to prove a violation of 18 U.S.C. 115(a)(1)(B), the United States must prove that the defendant:

(1)   threatened to assault or threatened to murder

(2)   a federal judge

(3)   with the intent to impede, intimidate, interfere with, or retaliate against that judge

(4)   on account of the judge's performance of his official duties.

United States v. Stewart, 420 F.3d 1007, 1015 (9th Cir. 2005); United States v. Orozco-Santillan, 903 F.3d 1262, 1265 (9th Cir. 1990).[1]

A threat is defined as "an expression of an intention to inflict evil, injury, or damage on another." Stewart, 420 F.3d at 1015 n.5; Orozco-Santillan, 903 F.3d at 1265.  The speaker need not actually intend to carry out the threat.  Stewart, 420 F.3d at 1019.  Nor is the government required to show that the speaker is even able to carry out the threat.  Orozco-Santillan, 903 F.3d at 1265 n.3.

It is not required that a defendant communicate the threat directly to the intended target; receipt of the threat by a third party is sufficient.  Stewart, 420 F.3d at 1016 (defendant, while incarcerated, made threats about a federal judge to a jailhouse informant).

---

[1]   Orozco-Santillan was later overruled on unrelated grounds pertaining to the standard of review on appeal, as recognized by the Ninth Circuit in United States v. Hanna, 293 F.3d 1080, 1088 (9th Cir. 2002).

**B.    Evidence in a Prosecution Under Section
        115(a)(1)(B)**

In general, to prove the elements of threats to a federal
officer in violation of 18 U.S.C. § 115(a)(1)(B), the following
types of evidence are relevant and admissible:

Evidence of the recipient's state of mind, including whether
the person who is the object of the putative threat perceives the
statement as a threat, as well as actions taken in response to the
threat.  United States v. Davis, 876 F.2d 71, 73 (9th Cir. 1989)
(case involving threats to federal judge; "Evidence of the
recipient's state of mind, as well as his actions taken in response
to the letter, are highly relevant in establishing an essential
element . . . whether the letter could reasonably be read as
containing a threat of injury.").

Evidence of the defendant's motive for making the alleged
threats.  United States v. Chase, 301 F.3d 1019, 1026-28 (9th Cir.
2002)[2] (case involving threats to FBI agents, holding that evidence
of defendant's threats to other persons were properly admitted to
explain defendant's reasons for threatening the FBI agents).

---

[2]    The panel opinion in Chase, 301 F.3d 1019 (9th Cir.
2002), was vacated when the Ninth Circuit granted rehearing of
the case en banc.  United States v. Chase, 314 F.3d 1031, 1031
(9th Cir. 2002) (ordering rehearing en banc).  The Ninth
Circuit's published en banc opinion, United States v. Chase, 340
F.3d 978 (9th Cir. 2003), expressly approves and incorporates
those portions of the panel opinion at pages 1026-31.  340 F.3d
at 992-93 ("[W]e pause to consider whether the evidence of other
threats was properly admitted in the government's case concerning
Count II.  We believe that it was, for the reasons stated in the
three-judge panel's opinion.  Chase, 301 F.3d at 1026-31.").

Thus, although the Chase panel opinion was technically
vacated, the relevant discussion in that opinion, 301 F.3d at
1026-31, is not only good law, but has the approval of the Ninth
Circuit sitting en banc.

Evidence of the defendant's angry behavior, on a previous occasion, toward the recipient of the threat. Stewart, 420 F.3d at 1015 (case involving threats to a federal judge; facts supporting guilty verdict included evidence of defendant's "anger and smoldering rage" at the judge during an earlier trial).

Any other evidence of the factual context of the alleged threats, including surrounding events and the reaction of the listeners. Chase, 301 F.3d at 1031 ("alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners"); Orozco-Santillan, 903 F.2d at 1265 (same).

### C. The First Amendment's Requirement of "True Threats"

The protections of the First Amendment do not extend to so-called "true threats." Virginia v. Black, 538 U.S. 343, 359 (2003). In determining whether a statement amounts to a "true threat," courts have used, alternatively, an objective standard or a subjective standard. Fogel v. Collins, 531 F.3d 824, 831 (9th Cir. 2008). An objective standard asks "'whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault.'" Id. (quoting Orozco-Santillan, 903 F.3d at 1265). The objective standard calls for an examination of the speech in light of its entire factual context, including the surrounding events and reaction of the listeners. Fogel, 531 F.3d at 831. The Ninth Circuit has traditionally applied this objective standard. Stewart, 420 F.3d at 1016 ("In defining a 'true threat,' our precedent has generally called for application of an objective test.").

13

1    In 2003, the Supreme Court in <u>Virginia v. Black</u> stated that
2  "true threats encompass those statements where the speaker intends
3  to communicate a serious expression of an intent to commit an act
4  of  unlawful  violence  to  a  particular  individual  or  group  of
5  individuals." <u>Black</u>, 538 U.S. at 359.  Following <u>Black</u>, the Ninth
6  Circuit applied a subjective standard in <u>United States v. Cassel</u>,
7  408 F.3d 622, 633 (9th Cir. 2005).   The Ninth Circuit concluded
8  that speech is a "true threat" only if "the speaker subjectively
9  intended the speech as a threat."  <u>Id.</u>

10   In cases decided after the Supreme Court's decision in
11 <u>Virginia v. Black</u> and the Ninth Circuit's decision in <u>Cassel</u>, the
12 Ninth Circuit has expressly recognized that it has not yet ruled on
13 whether an objective or subjective standard applies.  <u>See</u> <u>Fogel</u>,
14 531 F.3d at 831 ("This circuit has thus far avoided deciding
15 whether to use an objective or subjective standard in determining
16 whether there has been a 'true threat.'"); <u>Stewart</u>, 420 F.3d at
17 1018 ("[W]e need not decide whether the objective or subjective
18 'true threat' definition should apply here.").

19   In this case, the Court is not necessarily required to resolve
20 the question left open by the Ninth Circuit of whether, under the
21 First  Amendment,  a  "true  threat"  should  be  evaluated  by  an
22 objective or a subjective standard.   This is because the elements
23 of  the  statute  at  issue  here,  18  U.S.C.  115(a)(1)(B),  have
24 historically  been  interpreted  in  a  way  that  includes  both  the
25 objective standard and the subjective standard.

26   In reciting the elements of Section 115(a)(1)(B), the Ninth
27 Circuit has traditionally applied the objective standard to one of
28 the  elements  of  the  offense:    the  element  that  the  defendant

threatened to assault or murder a federal officer. <u>See</u> <u>Chase</u>, 301 F.3d at 1030-31; <u>Orozco-Santillan</u>, 903 F.3d at 1265. That is, the standard for determining whether the defendant made a "threat," for purposes of this element, is "whether a reasonable person would foresee that the [statement] would be interpreted by those to whom the maker communicates the threat as a serious expression of intent to harm or assault." <u>Chase</u>, 301 F.3d at 1030. This is the objective standard.

The Ninth Circuit has recognized that the subjective standard is contained in a *separate* element of the same offense: the element that the defendant acted with the intent to impede, intimidate, interfere with, or retaliate against a federal official. In <u>Stewart</u>, the Ninth Circuit explained the specific intent requirement contained in this element:

> [B]y its express language, section 115(a)(1)(B) contains a specific intent element: it punishes only threats made regarding enumerated officials with the intent to impede, intimidate, interfere with, or retaliate against such officials on account of the officials' performance of official duties. Thus, a conviction under that statute could only be had upon proof that the speaker intended the speech to impede, intimidate, interfere with, or retaliate against the protected official. *Such proof would seem to subsume the subjective "true threat" definition announced in Black and recognized by* <u>Cassel</u>; *one cannot have the intent required under section 115(a)(1)(B) without also intending to make the threat.*

420 F.3d at 1017 (emphasis added).

In light of the uncertainty within the Ninth Circuit over whether the First Amendment requires an objective or a subjective standard to evaluating "true threats," the United States submits that this Court should instruct the jury on the elements of 18 U.S.C. 115(a)(1)(B) in a way that defines the element of "threatening to assault or murder a federal officer" with reference

1   to an objective standard; recognizing that a separate, independent

2   element of the offense subsumes the subjective standard.  Such an

3   approach is consistent not only with the Supreme Court's decision

4   in Black, but also with the elements of Section 115(a)(1)(B) as

5   they have traditionally been explained to a jury in the Ninth

6   Circuit.   For example, in Chase, 301 F.3d at 1030-31, the Ninth

7   Circuit approved the following instruction given by the district

8   court:

9       A threat is an expression of an intention to inflict
        evil, injury, or damage on another.  Alleged threats
10      should be considered in light of their entire factual
        context, including the surrounding events and reactions
11      of the listeners.

12      Whether a particular statement may properly be considered
        to be a threat is governed by an objective standard,
13      whether a reasonable person would foresee that the
        [statement] would be interpreted by those to whom the
14      maker communicates the threat was a serious expression of
        intent to harm or assault.
15
        The defendant must intentionally or knowingly communicate
16      a threat, but the government need not show that the
        defendant intended or was able to carry out the threat.
17      It is not required that the defendant communicate the
        alleged threats to the objects of the alleged threats.
18      It is, however, necessary for the government to prove
        that the defendant intended to impede, intimidate,
19      interfere with, or retaliate against the object of the
        alleged threats.
20
21  The United States is submitting a substantially identical

    instruction in its proposed jury instructions in this case.
22
    Such an instruction is consistent both with the elements of
23
    Section 115(a)(1)(B) and with the requirements of the First
24
    Amendment.
25
    //
26
    //
27
    //
28

# VII

## **VOIR DIRE**

Proposed voir dire questions are being filed today under separate cover.  As set forth therein, the United States respectfully requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

Employment

1.   What is your occupation?  If you are married, what is the occupation of your spouse?  If you are retired, please explain the type of employment you had prior to retiring.

2.   Do you have any children?   If so, what are their occupations?

Criminal Justice System

3.   Have you or any members of your family, or close friends, ever been charged with a criminal offense?  If so, what was the nature of the offense, and how was it resolved?

4.   Have you, or any members of your family, or close friends, ever been a victim of, or witness to, a crime? If so, what were the circumstances, and how was the matter resolved?

Government and Courts

5.   Has anyone had any unpleasant experience with any agency of the United States Government?  The Social Security Administration?  The IRS?

6.   Has anyone been audited by the IRS? If so, do you feel you were treated fairly?

7.   Has anyone been a party to a civil lawsuit?  What kind of

proceeding was it?  Did you feel you were treated fairly?
Were you satisfied with the way the proceeding was
handled?

8.   Has anyone had an unpleasant experience with a judge?
     Has anyone filed a lawsuit that was thrown out or
     dismissed by a judge?

9.   Has anyone had an instance where you believe friends or
     family were treated unfairly in a court proceeding?

10.  Has anyone represented himself or herself in a court
     proceeding?

Lawyers

11.  Are you, or are any of your family members or close
     friends, lawyers or judges?  If so, what type of law do
     they practice?

Law Enforcement

12.  Have you or any family member served as a law enforcement
     officer?  If so, please explain the nature of that work.

13.  Has anyone had an unpleasant experience with any law
     enforcement personnel?

Military Service

14.  Have you or any family member served in the U.S.
     military?  If so, please explain that service.

15.  Have you or any family member had any dealings with the
     Veterans Administration (VA)?  If so, did you feel that
     you or your family were treated fairly?

Prior Jury Service

16.  Have any of you served on a jury trial in either state or
     federal court?  If so, was it a civil or criminal case?

1   If criminal, what kind of case was it? Did the jury

2   reach a verdict?

3   <u>First Amendment</u>

4   17.   Does everyone understand that the First Amendment

5   protects the freedom of speech, but that it provides no

6   protection to "true threats"?

7   <u>Evaluation of Evidence and Lack of Bias</u>

8   18.   Does everyone understand that, as a juror, you are not to

9   consider prejudice, pity, or sympathy in deciding whether

10   the defendant is guilty?

11   19.   Does everyone understand that as a juror, it is your duty

12   is to apply the law as the Court gives it to you,

13   regardless of whether you disagree with it?

14   20.   Does everyone understand that as a juror, it is your duty

15   to apply only the law that the judge gives to you in this

16   case, and not to surmise the law on any points on which

17   you are not instructed?

18   21.   Does anyone think they cannot decide whether a person is

19   guilty?

20   22.   Does anyone have religious or moral beliefs which will

21   make it difficult for them to pass judgment on the

22   defendant, or make a decision strictly based on the law

23   and facts of this case?

24   //

25   //

26   //

27   //

28   //

23. Will anyone fail to follow the law as given by the Court if they have a contrasting opinion of what the law is or should be?


DATED: October 1, 2010    Respectfully submitted,

                          LAURA E. DUFFY
                          United States Attorney

                          /s/ Robert S. Huie
                          ROBERT S. HUIE
                          Special Attorney

20

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

8
9

UNITED STATES OF AMERICA,          ) Case No. 06-CR-864-MRH
                                   )
10              Plaintiff,         ) **CERTIFICATE OF SERVICE**
                                   )
11              v.                 )
                                   )
12  TERRY LEE STEWARD,             )
                                   )
13              Defendant.         )
                                   )
14                                 )
                                   )
15

16  IT IS HEREBY CERTIFIED that:

17      I, Robert S. Huie, am a citizen of the United States and am
    at least eighteen years of age.  My business address is 880 Front
18  Street, Room 6293, San Diego, California 92101-8893.

19      I am not a party to the above-entitled action.  I have caused
    service of the **UNITED STATES' TRIAL MEMORANDUM** on the following
20  parties by electronically filing the foregoing with the Clerk of
    the District Court using its ECF System, which electronically
21  notifies them.

22      Errol Stambler, Esq.
        *Attorney for Defendant*
23

24      I declare under penalty of perjury that the foregoing is true
    and correct.

25      Executed on October 1, 2010.

26
                        /s/ Robert S. Huie
27                      ROBERT S. HUIE
                        Special Attorney
28